STANGEIS *v.* PONTIAC, OXFORD & NORTHERN
RAILROAD CO.

1. RAILROADS — NEGLIGENCE — WARNING SIGNS — STATUTES — FINDING
OF COURT.

Finding of fact by court in case tried without jury, that railroad
warning signboard failed to conform to 2 Comp. Laws 1929,
§ 11181, because of partial obstruction of view by trees in
the highway, is accepted where not challenged.

2. SAME — NEGLIGENCE — CROSSING ACCIDENT — PROXIMATE CAUSE.

A demonstration to mathematical certainty and to the exclusion
of all speculative possibilities is not the legal standard for
determining question of whether negligence of railroad in
maintaining insufficient signboard was proximate cause of
crossing accident resulting in death of occupant of car appar-
ently racing with another down dusty road toward railroad
tracks.

3. APPEAL AND ERROR — RAILROADS — NEGLIGENCE — CROSSING ACCI-
DENT.

Finding that insufficiency of railroad crossing signboard was not
proximate cause of crossing accident resulting in death of
occupant of car is affirmed as not being contrary to prepon-
derance of evidence, where other notice of the crossing would
have warned a prudent person of its existence in time to avoid
accident but no attempt was made to stop car until im-
mediately before it struck locomotive.

Appeal from Wayne; Weimer (George V.), J.,
presiding. Submitted January 5, 1934. (Docket No.
77, Calendar No. 37,372.) Decided March 6, 1934.

Case by Edward Stangeis, administrator of the
estate of Boley Stangeis, deceased, against Pontiac,
Oxford & Northern Railroad Company and Grand
Trunk Western Railroad Company for death of
plaintiff's decedent resulting from personal injuries

received in a railroad crossing accident. Judgment for defendants. Plaintiff appeals. Affirmed.

*Harold Goodman* (*Harry C. Milligan* and *Samuel C. Halpert*, of counsel), for plaintiff.

*H. V. Spike* and *William W. MacPherson*, for defendants.

FEAD, J. Defendants had judgment, on trial before the court without a jury, in a crossing collision case. The question is whether the court erred in finding that defendants' negligence was not the proximate cause of the death of plaintiff's decedent, 18 years old, passenger in an automobile driven by another.

The collision occurred on June 2d, a bright and clear day, between 5 and 6 o'clock p. m. The automobile was proceeding east on a gravel road, at a speed of 50 to 60 miles per hour. A freight train was running south at 15 to 20 miles per hour. The track is in a slight dip as it crosses the highway. About 300 or 400 feet west of the crossing was a highway warning sign, bearing in large letters "R.R." At the crossing and 16 feet south of the center of the road was a railroad warning sign conforming to 2 Comp. Laws 1929, § 11181, except as it failed to meet the requirement "to be seen by people before reaching the crossing." Trees in the highway, beginning about 100 feet west, partially hid the cross-arm of the sign. The court held that, while the sign was sufficient in the horse and buggy days, it was not sufficient for motor car traffic. The court did not indicate the distance the sign should have been visible to motorists. The ruling is not challenged and, therefore, we accept it as a finding of

fact. The insufficiency of the crossing sign was the only negligence of defendants found by the court.

For some distance, the car in which decedent was riding, a Hudson coach, was following and trying to overtake and pass an Oakland car. To witnesses, the cars appeared to be racing. They raised a cloud of dust. The Hudson passed the Oakland close to or at the highway warning sign, proceeded with undiminished speed to the track, turned slightly to the south as though trying to avoid a collision, but struck the locomotive near the front end. Both occupants were killed.

As the train approached the crossing and when about 1,200 feet away the engineer blew the usual crossing signal, two long and two short blasts of the whistle; and when some 200 or 300 feet distant, apprehensive that the automobile might not stop, gave several short blasts. The bell was ringing. The court held there was nothing to obstruct the view of the train from the road except the dust the cars were raising. In a carefully considered opinion the court said in part:

"The serious question, and it seems to me the controlling question, is one of fact, namely, was the inefficient signboard maintained by the railroad company at the crossing the proximate cause of the collision, or must it be said that the accident would in all probability have occurred anyway under the particular circumstances shown even if the signboard had been reasonably proper and efficient?

"The speed of the automobiles, the excitement of the race, and the dust, distracted the attention and obscured the vision of plaintiff's decedent and his driver to such an extent that even a proper and efficient crossing signboard would not in all probability have been observed until the Hudson had entirely passed the Oakland. Because of the speed of the

Hudson, which was admittedly going some faster than the Oakland, it was then too late to avoid the collision. The Oakland being ahead and the view of the railroad not being obscured by another car nor by dust, manifestly was able to see what was there to be seen. The speed of the Oakland not being so great as that of the Hudson was able to stop and did stop in time and at a place to avoid colliding with the train.

"The only purpose of the crossing signboard is, of course, to warn travelers of the presence of the railroad and the possibility of an approaching train. If a proper crossing signboard could possibly have been of any service as a warning under the particular circumstances of this case, then by the same token the highway sign with the large letters 'R.R.' 300 or 400 feet west of the crossing, which was admittedly in plain view, and the presence of the train approaching from the north also within plain view of plaintiff's decedent, except for the dust, should have been quite enough warning.

"The plain stubborn fact that the railroad crossing signboard had nothing whatever to do with this accident remains unchanged and unchangeable."

Plaintiff attacks the test of "probability" stated by the court and contends for the doctrine of *Davis v. Garrett,* 6 Bing. 716 (130 Eng. Rep. 1456), cited in *Beauchamp* v. *Saginaw Mining Co.,* 50 Mich. 163 (45 Am. Rep. 30), that when an injury occurs while a wrongful act is in operation, and the injury is "attributable to" such act or the act sets in motion a series of causes which produce the injury, the wrongdoer is liable unless it appears that the injury "must have" occurred had the wrongful act not been done and it is not a defense that it "might have" resulted.

The doctrine as stated in the books does not eliminate the element of contribution to the injury by the wrongful act, or proximate cause. Because plaintiff's decedent and his driver were unable to testify to conditions as they appeared to them and to the motives which actuated them, the court had no other recourse than to reason from known facts to the ultimate issue by means of weighing probabilities. A demonstration to a mathematical certainty and to the exclusion of all speculative possibilities is not the legal method or standard.

Because it is the purpose of the statute, we may assume, as an abstract proposition and in the absence of contrary showing, that a proper sign seasonably would have been observed by decedent and his driver, would have warned them, and the collision would have been avoided. But the purpose of the signboard is to warn drivers of the presence of railroad tracks. And if notice of the existence of a crossing was otherwise had and ignored, a finding of fact is justified that a signboard would have been of no added use as a warning, and, therefore, its absence could not have been the proximate cause of the injury. *Haas* v. *Railroad Co.*, 47 Mich. 401.

The court held that decedent had no prior knowledge of the crossing and was not guilty of contributory negligence. This means that decedent saw what a reasonably prudent person would have seen and did what such person would have done by way of warning his driver of the danger. The issue, then, is whether under the particular circumstances a reasonably prudent person would have been warned of the presence of the track in time to have avoided the collision. If he would have been, then decedent and his driver were so warned and the fault was in the driver and was not due to the in-

sufficient signboard.   Obviously the issue is one of fact.   See, *Bowsher* v. *Railway Co.*, 174 Mich. 339; *Fairchild* v. *Railway Co.*, 250 Mich. 252.

In addition to the situation before and at the time the Hudson car passed the Oakland, as outlined by the court, warning was given thereafter by the engine signals, the approach of the train toward the direct range of vision of decedent and his driver, and the fact that the signboard was in full view of them 100 feet from the track.   That the lack of proper signboard did not contribute to the injury is indicated by the fact that, in spite of all the warnings, no attempt was made to stop the car until immediately before it struck the locomotive.

The evidence seems persuasive that a longer range of vision of the signboard would have had no effect to prevent the collision and that the failure to see and heed the things which existed renders it mere speculation that a proper signboard would have been seen and heeded.   At least the facts strongly support the findings of the court, are opposed only by rebuttable presumptions and speculations, and we cannot say that the finding was contrary to the preponderance of the evidence.

Judgment affirmed, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.